## Warren, et al. v. Hainley, et al.

(Decided October 19, 1926.)

### Appeal from Graves Circuit Court.

Deeds.—Where deceased, at age of 81 years, deeded farm to nephew in consideration for support, evidence in action by deceased's sister to set aside deed held sufficient to support finding that grantor had mental capacity sufficient to make deed.

HERSCHEL T. SMITH for appellants.

J. E. WARREN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

A deed made by W. H. Hainley, now dead, at a time when he was eighty-one years of age, conveying his farm of 60 acres to his nephew, A. B. Hainley, in consideration of one dollar and certain services, is assailed in this litigation as invalid by Mrs. Warren, a sister of the grantor, and other members of the family on the ground that at the time of the making of the deed the grantor was of unsound mind, and was unduly influenced by his nephew, a young, strong and dominating character, to make the conveyance. The deed was made August 27, 1924, and the grantor, W. H. Hainley, died on October 9, 1924, forty-one days after the execution of the deed. The plaintiffs, now appellants, say that the land which Hainley deeded to his nephew, reserving to himself a life estate, was reasonably worth $6,000.00 at the time of the conveyance, while appellee says that the land was worth $1,500.00 or

$1,800.00 and no more. To establish the incapacity of the grantor to make the deed the plaintiffs and their witnesses testified that he was old, sick and infirm, at the time of the making of the deed and for some months previous thereto; that his mind was bad and that he said and did many things indicating that his mind was weak if not unbalanced. In substantiation of these charges the plaintiff proved that the grantor was a bachelor, eighty-one years of age; that he had owned the farm on which he lived for thirty or forty years, had never had the deed put to record, and when his residence burned about fourteen or fifteen years before his death, the deed was destroyed and he had no evidence of title; that after the destruction of his residence by fire he lived in a little shed on the place which had a roof but was open on one side so that one could drive a wagon in and out, and that he used a wagon bed for a sleeping place for about thirteen years before his death; that in this wagon bed he had piled corn shucks and had covered them with old bed clothing and that he used that bed continuously for so long that it became very filthy and gave off offensive odors. There was no chimney to the shed and the only way he had of warming it was by building a fire on the ground under the shed on some metal pieces that served for a stove, and he did what little cooking he had to do upon that arrangement; that he went to the home of his sister, Mrs. Warren, almost every day and got cold bread and carried it away in his pockets; that he frequently ate at his sister's, sometimes at the home of his brother and sometimes at the home of neighbors. There was some evidence tending to show that when he would see people coming to his house he would hide and would not answer them when they called. When he became sick in his last days, according to the evidence of his sister, Mrs. Warren, he stayed at her house in a little room off to one side, and he would frequently get up in the night and claw and scrape the walls and curse and swear. This evidence is somewhat explained by her on cross-examination, where it is shown that the deceased would get up in the night to get a drink of water and to attend to the calls of nature, and that the noise which she heard was probably due in part, if not altogether, to his stumbling about in the dark. The evidence shows that the old man did many peculiar and eccentric things, such as eating uncooked poke salad, raw potatoes, and allowed himself to become very filthy

and unsanitary. On the other hand, the witnesses for the appellee, of whom there was a large number, consisting chiefly of relatives and neighbors, testified that the grantor, W. H. Hainley, was a man of good, sound common sense although he had but little education but could read and write; that he frequently read a great deal and was fond of talking about the things he read and did so in a very intelligent and understanding way; while he was old and feeble in body, his mind was clear and he seemed to understand the things going on about him and to know what he wanted to do. Except for his age and feebleness of body he was about the same at the time of his death that he had been for several years previous; that his brothers and sisters, now appellants, were unkind to him and did not give him much attention in his lifetime, and that the grantee, A. B. Hainley, was the only member of the family who would wait upon him and take care of him during his lifetime. The lawyer, Mr. Francis, who prepared the deed for Mr. Hainley, stated that he had known the grantor for some years but not intimately up to the time he sent for him to draw the deed; that he went to the house of the grantor and after conversing with him for about thirty minutes on subjects in general in which the grantor seemed to be interested and to talk intelligently, the grantor told the lawyer just what he wanted to do and how he wanted it done, and directed the lawyer to prepare a deed conveying the land to A. B. Hainley, reserving a life estate in the grantor, on condition that the grantee take care of and support the grantor for the balance of his life, and in doing so would erect a residence for the grantor upon his land in which grantor might live. The deputy clerk who took the acknowledgment to the deed said he knew Mr. Hainley and that he had brought the deed to him to be acknowledged and that he talked with him on that day for some time and that he was rational in all respects. Many other neighbors who saw him about that time testified in substance the same.

Upon this evidence the chancellor, whom we must presume had a personal acquaintance with many, if not all, of the witnesses who testified upon the two sides, reached the conclusion that the grantor had mental capacity sufficient to make a deed disposing of his property, and upheld the transaction as valid. There was not sufficient evidence to warrant the conclusion that

the parties bore such a confidential relation to one an-
other at the time of the making of the deed as would
put the burden upon the grantee to show that the trans-
action was fair and free from fraud and undue influence.
We think, however, that the evidence for appellee
clearly shows that the grantor, old and unable to take
care of himself, desired to have a more comfortable
place in which to spend his declining days, made a good
bargain when he transferred his land to his nephew
in consideration of the grantee affording him the neces-
sities of life and giving him a decent burial. We see no
reason for disturbing the finding of the chancellor.

Judgment affirmed.